**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SIEMENS FIRST CAPITAL COMMERCIAL FINANCE, LLC, and FCC, LLC, d/b/a FIRST CAPITAL, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. CIV-09-1376-M ) |
| QBE INSURANCE CORPORATION, | ) ) |
| Defendant. | ) ) |

**ORDER**

Before the Court is plaintiffs' Motion for Partial Summary Judgment, filed May 10, 2010. On June 1, 2010, defendant filed its response, and on June 8, 2010, plaintiffs filed their reply.

I.  Background

This case involves a coverage dispute regarding a Trade Credit Insurance Policy that defendant issued to plaintiffs in May 2008 (the "Policy"). In December 2007, plaintiffs were considering providing financial services to Proview International Holdings, Ltd., located in Hong Kong, and its subsidiaries (collectively "Proview"). Proview manufactures monitors and owed trade payables to several key suppliers ("Suppliers") of component parts. Proview was having cash flow problems and could not pay its Suppliers promptly so Proview solicited financial services from companies experienced in factoring under an arrangement that afforded Proview additional float time.

Under its arrangement with plaintiffs, Proview first "accepted" trade payable drafts for later payment by Proview's bank, and then plaintiffs purchased the trade payable drafts by direct discounted payments to the Suppliers. Due to the very modest financial gain to plaintiffs in this arrangement, plaintiffs had to obtain trade credit insurance protecting plaintiffs in case the drafts

were dishonored. Plaintiffs obtained said insurance from defendant in May 2008. It is plaintiffs' position that the Policy requires defendant to pay 100% of the funds plaintiffs advanced. It is defendant's position that the Policy requires defendant to pay only 90% of the funds plaintiffs advanced.

Subsequent to May 2008, drafts in excess of $11 million were accepted by Proview and sold by the Suppliers to plaintiffs. Plaintiffs paid the Suppliers more than $10 million in initial satisfaction of 90% of the face value of the drafts. When plaintiffs presented the drafts to Proview's banks for payment, each draft was dishonored. In February 2009, plaintiffs made a statutory demand on Proview for payment of the dishonored drafts.

On March 10, 2009, plaintiffs submitted a claim to defendant under the Policy. Thereafter, defendant structured a settlement between plaintiffs and Proview, which resulted in a Settlement Agreement between plaintiffs and Proview, dated March 31, 2009. The agreement required Proview to make significant monthly payments with interest. Proview made the initial payment and has refused to make additional payments since that time. Thereafter, defendant paid 90% of the claim submitted by plaintiffs. Plaintiffs contend defendant should have paid 100% of the claim.

## II.    Discussion

Plaintiffs now move for partial summary judgment regarding the parties' rights and obligations under the Salvage provision of the Policy. Specifically, plaintiffs move for summary judgment in their favor on their Second Cause of Action for declaratory relief and on defendant's counterclaims for rescission of contract and declaratory relief. However, because this Court finds that there are disputed issues of material fact as to whether the Policy in fact can be enforced, the Court finds that it would be improper for this Court to make any ruling at this time regarding the

2

parties' rights and obligations under a provision of the Policy and, thus, finds that plaintiffs' motion for partial summary judgment should be denied.

"In order to have a valid contract, there must be mutual consent, a meeting of the minds." *Hampton v. Surety Dev. Corp.*, 817 P.2d 1273, 1274 (Okla. 1991) (citing Okla. Stat. tit. 15, §§ 2, 51). "Consent is not mutual unless the parties all agree upon the same thing in the same sense." Okla. Stat. tit. 15, § 66.

Having carefully reviewed the parties' submissions, the Court finds that there is a genuine issue of material fact as to whether there was mutual consent – a meeting of the minds – with respect to the Policy at issue. Plaintiffs have submitted affidavits stating that it was plaintiffs' intent for the Policy to insure 100% of the funds they advanced, and defendant has submitted an affidavit stating that it was always its intent to insure only 90% of the funds plaintiffs advanced and it was never defendant's intent to insure 100% of the funds plaintiffs advanced. Accordingly, based upon the evidence submitted, the Court finds that there is a dispute as to whether plaintiffs and defendant all agreed to the same percentage of the advanced funds that would be paid in case the drafts were dishonored. Because the Court finds that this term of the Policy was the crucial term for the parties, the Court finds if there was no meeting of the minds as to it, the Policy would not be valid and could not be enforced. Therefore, the Court finds that it would be improper for this Court to make any ruling at this time regarding the parties' rights and obligations under the Salvage provision of the Policy and, thus, finds that plaintiffs' motion for partial summary judgment should be denied.

III.　Conclusion

Accordingly, the Court DENIES plaintiffs' Motion for Partial Summary Judgment [docket no. 33].

**IT IS SO ORDERED this 10th day of September, 2010.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE